Tagged opinion



**ORDERED in the Southern District of Florida on October 30, 2007.**

**Paul G. Hyman, Chief Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                              Case No.: 05-34406-BKC-PGH
                                    Chapter 7 Proceeding
DONALD KIRSHNER,

    Debtor.
_____/

PATRICIA DZIKOWSKI, TRUSTEE

    Plaintiff,
v.                                  Adv. No.:06-01872-BKC-PGH-A

DONALD KIRSHNER,

    Defendant.
_____/

<u>MEMORANDUM ORDER: SUSTAINING TRUSTEE'S OBJECTION TO DISCHARGE;
AND OVERRULING IN PART, AND SUSTAINING IN PART, TRUSTEE'S
OBJECTION TO DEBTOR'S CLAIMS OF EXEMPT PROPERTY</u>

**THIS MATTER** came before the Court for trial on July 27, 2007

and September 12, 2007, upon Patricia Dzikowski's, Trustee,

("Plaintiff" or "Trustee") *Complaint Objecting to Discharge of*

*Debtor and Debtor's Claim of Exempt Property* ("Complaint"). The Trustee objects both to Donald Kirshner's ("Mr. Kirshner" or "Debtor") discharge pursuant to 11 U.S.C. §§ 727(a)(2), 727(a)(3), and 727(a)(5), and to Mr. Kirshner's claims of exempt property. The Court having heard the testimony of the witness, having considered the documentary evidence, the candor and demeanor of the witness, and having been otherwise fully advised in the premises, hereby sets forth its findings of fact and conclusions of law.

## **FINDINGS OF FACT**

This case was commenced on November 4, 2002 by the filing of an involuntary Chapter 7 petition in New Jersey. The case was transferred to the Southern District of Florida on August 7, 2003. The Debtor moved to Florida from New Jersey in approximately January, 2002. The Debtor, after initially contesting the involuntary petition filed against him, consented to the entry of an Order for relief and converted the involuntary Chapter 7 case to a Chapter 11 case on April 14, 2004. The Chapter 11 case was converted back to a case under Chapter 7 on December 6, 2004. Patricia Dzikowski was appointed as the Chapter 7 Trustee. The last day for the Trustee to object to the Debtor's discharge and the Debtor's claimed exemptions was extended by the Court to August 31, 2006. The above Adversary Proceeding was timely filed by Patricia Dzikowski, in her capacity as Chapter 7 Trustee, on April 6, 2006.

2

Mr. Kirshner was the only witness at trial. He testified that he has been in the entertainment business since approximately 1958 as a record producer, music publisher, TV host, and finder of talent. Mr. Kirshner was at one point a highly successful recording executive dubbed by Time Magazine as "The Man With The Golden Ear."

Mr. Kirshner testified that he did not regularly keep account ledgers or journals for his bank account, nor did he maintain a computer program to keep track of his income and expenses. He testified that he is a "creative" type who always relied on others, accountants and lawyers, to manage his affairs and to handle his tax returns and financial matters. He testified that he kept bank statements and other documents he received only until such time as he could turn them over to his accountant.

Mr. Kirshner testified that he never contemplated filing for bankruptcy and that he believes he was improperly advised by counsel to consent to the involuntary bankruptcy petition filed against him. Mr. Kirshner testified that he gave all records in his possession, other than some that might have been lost in the hurricane, to the Trustee or to Ms. Feinman, the Assistant U.S. Trustee, during the pendency of the Chapter 11 case. Mr. Kirshner testified that he did not believe he needed to keep copies, and he did not keep copies, of documents he gave to Ms. Feinman. Mr. Kirshner testified that he did everything in his power to comply with the Trustee's request for documentation. Mr. Kirshner obtained

3

the documentation he provided to the Trustee from his attorney, his accountant, or, at considerable expense to himself, by subpoenaing bank statements from Wachovia Bank, and Suntrust Bank. Mr. Kirshner's subpoena on Sovereign Bank, where he testified that he had an account during the time he lived in New Jersey, was unproductive. Mr. Kirshner testified that Sovereign Bank had merged with another bank and no records were available prior to 2000 or 2001.

The Trustee represented that all of the documentation produced by Mr. Kirshner to the Trustee at any point in this case was introduced into evidence at trial. Despite Mr. Kirshner's efforts to obtain documents from third parties, the documentation produced by Mr. Kirshner is incomplete. Mr. Kirshner did not produce any bank account records or cancelled checks for accounts owned by him for any period prior to May 20, 2002. The records produced by Mr. Kirshner are insufficient to allow the Trustee to reasonably follow the Debtor's transactions, or to ascertain his past and present financial condition with substantial accuracy.

Mr. Kirshner's federal income tax returns show his income in the indicated years as follows:

| Year | Income |
|------|--------|
| 1999 | $410,038.00 |
| 2000 | $300,000.00 |
| 2001 | $320,000.00 |
| 2002 | $125,927.00 |
| 2003 | $130,000.00 |

4

Mr. Kirshner produced no bills reflecting the expenditure of this income.

Mr. Kirshner also testified that Matt Wager, a business associate, loaned him between $500,000 and $1,000,000 over the last several years through Secorp corporation. On April 10, 2005, Matt Wager filed a proof of claim in this case in the amount of $531,020.00. Matt Wager withdrew this proof of claim on September 25, 2006. Mr. Kirshner produced no documentation to show where these funds were deposited or how these funds were spent except for a few payments back to Secorp that Mr. Kirshner said were consulting fees for Matt Wager.

## CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (J).

### *The Complaint*

Trustee's Complaint seeks denial of Debtors's discharge on three bases. First, the Trustee alleges that pursuant to §727(a)(3), the Debtor failed to keep adequate records from which his financial condition or business transactions might be ascertained and that this failure is unjustified. Second, the Trustee alleges that pursuant to § 727(a)(5), the Debtor failed to satisfactorily explain the loss or deficiency of assets to meet his liabilities, the specific asset being the Debtor's reported

earnings of hundreds of thousands of dollars in each year through the filing of the involuntary case. Third, the Trustee alleges that pursuant to § 727(a)(2), the Debtor's failure to provide requested documentation was a *de facto* concealment of property by the Debtor with the intent to delay or defraud creditors. In addition to seeking denial of the Debtor's discharge, the Trustee also objects to the Debtor's claims that certain property is exempt.

### *Denial of Discharge*

Courts have repeatedly stated that the Bankruptcy Code serves the public interest as well as private interest by giving "the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort. The discharge provided in 11 U.S.C. § 727 'is the heart of the fresh start provisions of the bankruptcy law.'" *Great Am. Ins. Co., v. Nye (In re Nye)*, 64 B.R. 759, 761-62 (Bankr. E.D.N.C. 1986)(internal citations omitted). However the statute, by its very nature, invokes competing considerations. *Tully v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987). Bankruptcy is an essentially equitable remedy, affording a fresh start to the "honest but unfortunate" debtor but denying discharge to debtors who do "not measure up to that appealing image." *Nye*, 64 B.R. at 762. Thus, § 727 provides several bases upon which discharge may be denied. However, objections to discharge are strictly construed against the creditor

6

and liberally in favor of the debtor. *Keefe v. Rudolph (In re Rudolph)*, 233 Fed. Appx. 885, 887 (11th Cir. 2007). The party objecting to discharge carries the burden of proof. Once the plaintiff meets its initial burden to produce evidence substantiating the basis for the objection, the burden shifts to debtor. *In re Nye*, 64 B.R. at 762.

Trustee's Complaint, insofar as it seeks denial of the Debtor's discharge, is primarily based upon the Debtor's alleged failure to keep adequate financial records. Trustee's Complaint molds this allegation into claims for violations of three subsections of § 727. The Trustee did not meet his burden with respect to § 727(a)(2), however the Court must sustain the Trustee's objection to Debtor's discharge pursuant to §§ 727(a)(3) and 727(a)(5).

### 1. 11 U.S.C. § 727(a)(2)

Section 727 provides that a debtor shall receive a discharge unless

> (2)the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> > (A) property of the debtor, within one year before the date of the filing of the petition; or
> >
> > (B) property of the estate, after the date of the filing of the petition;

11 U.S.C. § 727(a)(2).

7

"Section 727(a)(2) is intended to prevent the discharge of a debtor who attempts to avoid payment to creditors by concealing or otherwise disposing of assets." *Menotte v. Davis (In re Davis)*, 363 B.R. 614, 619 (Bankr. M.D. Fla. 2006)(citations omitted). It is Trustee's theory that Debtor's failure to provide certain financial information was a *de facto* concealment of property done with the intent to hinder the Trustee's administration of this case.

However, the Court finds that the Trustee failed to show that the Debtor acted with intent to hinder, delay or defraud the Trustee in the administration of the estate by concealing property and/or financial documents. Mr. Kirshner testified credibly that he has never kept financial records. He ultimately produced financial records of his affairs from third parties including his lawyer, his accountant, and from banking institutions by subpoena at considerable expense to himself. It is significant that this case was commenced as an involuntary proceeding. The Court found Mr. Kirshner credible when he testified that he never contemplated filing for bankruptcy. Having never contemplated filing for bankruptcy, he could not have concealed property of the estate within one year before the date of the filing of the petition with the intention of delaying and hindering the Trustee in the administration of this case as Trustee alleges. Section 727(a)(2) requires wrongful intent on the part of the Debtor. Trustee has failed to prove that the Debtor effected a "de facto" concealment

and that in doing so, he acted with intent to hinder and delay the Trustee in the administration of this case. Therefore, Trustee's objection to discharge pursuant to section 727(a)(2) is denied.

## 2. 11 U.S.C. §§ 727(a)(3) & 727(a)(5)

Unlike § 727 (a)(2), intent is not an element of proof under §§ 727 (a)(3) and (a)(5). *In re Scott*, 172 F. 3d 959, 969 (7th Cir. 1999). Thus, even without proof of intent, discharge may still be denied: to a debtor who has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information from which the debtor's financial condition might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case (11 U.S.C. § 727(a)(3)); or to a debtor who has failed to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities (11 U.S.C. § 727(a)(5)). *In re Davis*, 363 B.R. at 619. In this matter the Court finds that the Debtor has unjustifiably failed to keep or preserve recorded information from which his financial situation may be ascertained in violation of § 727(a)(3). He has also violated §727(a)(5) by failing to satisfactorily explain the deficiency of his assets to meet his liabilities given that he had earnings of several hundred thousand dollars per year prepetition.

Section 727(a)(3) "places an affirmative duty on the debtor to create books and records accurately documenting his business affairs." *In re Scott*, 172 F.3d at 969.

9

"The court has wide discretion in determining the sufficiency of records." The court must determine if "the books and records of the debtor are adequate to permit the court and creditors to trace the debtor's financial dealings." While perfect record keeping is not required, the creditors examining the debtor's records "must be reasonably able to follow the debtor's business transactions, make intelligent inquiry, verify the oral statements and explanations of the bankrupt, and ascertain the present and past financial condition of the bankrupt [with] substantial completeness and accuracy."

*Sackett v. Shahid (In re Shahid)*, 334 B.R. 698, 706-707 (Bankr. N.D. Fla. 2005) (internal citations omitted).

The Trustee has met his burden to show that the Debtor failed to keep adequate records, or to produce adequate records, from which his past and present financial condition might be ascertained with substantial completeness and accuracy. The Debtor reported hundreds of thousands of dollars in income on his federal tax returns for the period 1999-2004, however the documentation that was produced by the Debtor failed to adequately show where this income was deposited or how it was spent. The financial records that were produced also failed to show where the significant funds loaned to the Debtor by Matt Wager were deposited or how said funds were spent. Since the Trustee has met his burden to show that the Debtor's records are inadequate, the burden now shifts to the Debtor to justify the inadequacy of his records.

In order to determine if the failure to keep adequate records is justified the Court must determine what records someone in like circumstances would keep. *In re Sendecky*, 283 B.R. 760, 764 (B.A.P.

10

8th Cir. 2002)(affirming trial court's finding justification for inadequate record keeping by poorly educated debtor with little business experience or sophistication who produced income tax returns, checking account records, and credit reports). In this case, the Debtor testified that he never kept financial records and that he never contemplated filing for bankruptcy. As discussed below, the Court finds no justification for the Debtor's inadequate record keeping. However, the Court reiterates that it also found no wrongful intent on the part or Mr. Kirshner.

The Court recognizes that this case was commenced as an involuntary bankruptcy and that the Debtor did not change his record keeping practices in anticipation of filing bankruptcy. Thus, "[t]here is a clear distinction between [Mr. Kirshner's] situation and that of a debtor, who having failed to preserve his financial records, voluntarily seeks the bankruptcy court's protections." *In re Shahid,* 334 B.R. at 708. Like Mr. Kirshner, the debtor in *Shahid* was placed into an involuntary bankruptcy. *Id.* Like Mr. Kirshner, the debtor in *Shahid* also kept no records of his financial affairs. *Id.* The *Shahid* court denied the debtor his discharge in part because the debtor produced no records other than three unsigned tax returns and because the debtor took no action to obtain documents or records from his accountant, banks, or credit card companies. *Id.* at 707. Unlike the debtor in *Shahid*, Mr. Kirshner did attempt to cooperate with the Trustee and to procure

11

his records from third parties. However, the records that were
ultimately produced are insufficient to be able to reasonably
follow Mr. Kirshner's transactions or to ascertain his past and
present financial condition with substantial accuracy.

1.       The Trustee objected to the lack of documentation
regarding the sources of Mr. Kirshner's income. Mr. Kirshner
testified that his dealings with Matt Wager were informal and
typical for the entertainment business where things were done
on a handshake just as they had been between Elvis Presley and
Colonel Parker. As an example, Mr. Kirshner relayed his
experience of receiving a check for $150,000 for simply being
available to the phone in the event Richard Branson called at
the time of the EMI takeover of Branson's company for a
billion and a half dollars. Mr. Kirshner testified that there
was no contract or other documentation for this transaction.
The Court finds Mr. Kirshner's testimony credible and that it
may indeed justify Mr. Kirshner's lack of documentation
regarding the sources of his income. However, it does not
justify his failure to adequately record the deposit and
disbursement of his income. The record keeping exception to
discharge gives the Court wide discretion to determine the
sufficiency of a debtor's records. *Shahid*, 334 B.R. at 706.
"Each case must be determined on its own facts." *Davis,* 363
B.R. at 620. "The standard applied to a debtor who is involved

12

in business may be more stringent than the standard imposed on a debtor who is an unsophisticated wage earner." *Id.* "The inquiry should include the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to the debtor in his business; and any other circumstances that should be considered in the interest of justice." *Shahid*, 334 B.R. at 708. The Court recognizes that Mr. Kirshner is a "creative" rather than a "financial" type of person. Nevertheless, the complexity of his financial affairs and the magnitude of his income required him to maintain more reasonably complete financial records. The Court does not question Mr. Kirshner's good faith. However, he has provided no adequate justification for his failure to maintain financial records from which his financial condition may be accurately ascertained.

The Trustee also objected to Debtor's discharge pursuant to section 727(a)(5) based upon Debtor's failure to satisfactorily explain the loss or disposition of the significant income that was reflected on his tax returns and the funds that were loaned to him by Matt Wager. "To be satisfactory, 'an explanation' must convince the judge. Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory." *In re Chalik*, 748 F.2d 616, 619 (11th Cir.

13

1984)(citations omitted). When asked what happened to the income reflected on his tax returns, Mr. Kirshner testified that the funds were spent on household and living expenses. However, Mr. Kirshner provided no documentation, invoices or cancelled checks, to substantiate his testimony thereby rendering his explanation vague and unsatisfactory in violation of § 727 (a)(5). Based upon the foregoing, the Court sustains Trustee's objection to Debtor's discharge pursuant to §§ 727(a)(3) and 727 (a)(5).

***Objection to Debtor's Claims of Exemption***

The Trustee also objects to the Debtor's claims of exemption, based upon ownership with his wife as tenants by the entirety, for household goods and furnishings, clothing, 2 fossil watches, a gold chain, a lawsuit against CEA Entertainment which is pending in California, and stock in Kirshner International, Inc. The Trustee further objects to the Debtor's claim of exemption for a term life insurance policy based upon Fla. Stat. 222.13, and to a pending Rule 9011 motion ("Rule 9011 Motion") in this case that was claimed as exempt based upon the $1,000.00 personal property exemption found in Article X of the Florida Constitution.

The Debtor acknowledged that the CEA Entertainment lawsuit is not exempt and surrendered same to Trustee. The Debtor testified that his clothing, the two Fossil watches, and the gold chain that was given to him by his father are solely his property. These items are not owned with his wife as tenants by the entirety. Thus, the

14

Debtor may claim the clothing, the two Fossil watches and the gold chain as exempt pursuant to the personal property exemption of Article X of the Florida Constitution provided the total value of Debtor's personal property does not exceed the $1,000.00 cap for this exemption. Debtor also testified that he had no ownership interest in the life insurance policy. Consequently, the life insurance policy is not property of the estate subject to exemption. The Kirshner International, Inc. stock was properly claimed as exempt. The stock certificate which is dated December 6, 2002, indicates that it is owned by the Debtor and his wife as tenants by the entirety. Thus, the Kirshner International Inc. stock was issued after the Debtor and his wife moved to Florida, and Florida exemptions apply. The claims of exemption for the Debtor's household goods and furnishings, and for the Rule 9011 Motion are not so easily resolved and are examined below.

The Trustee also argued that even if the Court found that the Debtor and his non-filing spouse held property as tenants by the entirety, there existed joint creditors that would render any entireties property nonexempt. As to this argument, the Court notes that the Trustee failed to introduce any evidence that the Debtor's non-filing spouse is jointly obligated on any of the Debtor's debts.

***1. Household Goods and Furnishings***

Pursuant to 11 U.S.C. § 522(b)(3)(B), an individual is entitled to exclude from the bankruptcy estate "... any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety ... to the extent that such interest . . . is exempt from process under applicable nonbankruptcy law." 11 U.S.C. § 522(b)(3)(B).

In the Court's view, the first issue is whether the Debtor had an interest in the household goods and furnishings as a tenant by the entirety. If the Debtor has such an interest, the next issue is whether New Jersey or Florida law is the applicable nonbankruptcy law that determines if the property is exempt from process pursuant to § 522(b)(3)(B).[1]

Property held as tenancy by the entireties possesses six characteristics: (1) unity of possession (joint ownership and control); (2) unity of interest (the interests in the account must be identical); (3) unity of title (the interests must have originated in the same instrument); (4) unity of time (the interests must have commenced simultaneously); (5) survivorship; and (6) unity of marriage (the parties must be married at the time the property became titled in their joint names). *Kossow*, 325 B.R.

---

[1]In New Jersey property owned as tenants by the entirety is *not* exempt from the claims of an individual's creditors, whereas in Florida property owned as tenants by the entireties is exempt from the claims of an individual's creditors. With limited exceptions, entireties property does not become property of the estate when only one spouse files for bankruptcy in Florida. *See e.g. Kaplan v. First Options of Chicago, Inc.*, 189 B.R. 882, 891 (E.D. Pa. 1995); *In re Kossow*, 325 B.R. 478, 483 (Bankr. S.D. Fla. 2005).

478, 483 (Bankr. S.D. Fla. 2005). In addition to these six characteristics the parties must intend to create such an estate. *Doing v. Riley*, 176 F.2d 449, 454 (5th Cir. 1949).

Given the requirement of intent and the unity of time, the issue of whether a tenancy by the entireties was created must be determined pursuant to New Jersey law, the state where the property was acquired. The Trustee argues that New Jersey does not recognize tenants by the entirety as an ownership interest providing for the exemption from the claims of all but joint creditors, and therefore the Debtor and his wife could not have had the intent required to create a tenancy by the entireties. In support of this argument, the Trustee provided the Court with Judge Altonaga's unreported opinion in *Goldman v. Dzikowski*, Case No. 05-80668-CIV (S.D. Fla., Mar. 6, 2006). *Goldman* involved a Debtor's claim of exemption as tenants by the entirety for property that the Debtor and his non-filing spouse acquired in Arizona. *Id.* In *Goldman*, Judge Altonaga determined that although Florida law was the nonbankruptcy law applicable to the dispute, Arizona law precluded the Debtor and his non-filing spouse from purchasing personal property with the intent to hold it as tenants by the entirety because Arizona is a community property state that does not recognize tenants by the entirety ownership. *Id.*

However New Jersey, unlike Arizona, does recognize tenants by the entirety ownership in some form. New Jersey has long followed

17

the common law which recognizes tenants by the entirety ownership for real property. *King v. Greene*, 153 A.2D 49 (N.J. 1959). However under the common law, New Jersey did "not recognize the existence of tenancies by the entireties in personal property." *In re Goldstein*, 66 B.R. 909, 913 (Bankr. W.D. Pa. 1986). It appears that in 1987, New Jersey adopted a new statute that recognizes the possibility of ownership as tenants by the entireties for personal property as well as for real property. However, the statute requires a written instrument to create a tenancy by the entireties in personal property. New Jersey Statutes § 46:3-17.2 provides that:

A tenancy by entirety shall be created when:

  a. A husband and wife together take title to an interest in real property or personal property under a written instrument designating both of their names as husband and wife; or

  b. A husband and wife become the lessees of real property or personal property under a written instrument containing an option to purchase designating both of their names as husband and wife; or

  c. An owner spouse conveys or transfers an interest in real property or personal property to the non-owner spouse and the owner spouse jointly under written instrument designating both of their names as husband and wife.

Language which states "...... and ......, his wife" or ".......... and .........., her husband" shall be deemed to create a tenancy by the entirety.

N.J. Stat. Ann. § 46:3-17.2 (1987).

Thus, contrary to Trustee's argument, it is possible to acquire property in New Jersey as tenants by the entireties. Nevertheless, the Debtor has produced no written instrument, as required by N.J.S.A. § 46:3-17.2, to show that the Debtor and his non-filing spouse acquired the subject personal property as tenants by the entireties. Thus, the Court finds that the household goods and furnishings are not held by the Debtor and his wife as tenants by the entirety.

## 2.    *Rule 9011 Motion*

On May 25, 2004, the Debtor filed a Rule 9011 Motion in the main bankruptcy case (Case No. 03-34406-BKC-PGH, C.P.# 76). The Trustee objects to the Debtor's claim that the Rule 9011 Motion is exempt pursuant to Florida's Article X personal property exemption. The Rule 9011 Motion seeks monetary sanctions against the petitioning creditors and their attorneys for allegedly having improperly filed the involuntary petition. The Rule 9011 Motion seeks sanctions for the Debtor's attorneys fees, costs, and other damages. In the Court's view the first issue to be determined is whether the Rule 9011 Motion is property of the estate, not whether it is exempt. Section 541(a)(1) of the Bankruptcy Code defines "property of the estate" to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "Federal law determines whether an interest is property of the bankruptcy estate, and '[p]roperty

19

interests are created and defined by state law'". *Witko v. Menotte (In re Witko)*, 374 F.3d 1040, 1043 (11th Cir. 2004)(internal citations omitted).

Under Florida law, a cause of action accrues when the last element constituting the cause of action occurs. *In re Alvarez*, 224 F. 3d 1273, 1277 (11th Cir. 2000)(*citing* Fla. Stat. § 95.031(1)). In *Alvarez*, the Debtor filed an action against his attorney alleging that it was malpractice for his attorney to file a Chapter 7 case instead of a Chapter 11. *Id.* at 1275. The malpractice cause of action accrued at the moment the bankruptcy petition was filed. *Id.* at 1278. The Eleventh Circuit determined that the debtor's cause of action was property of the estate because it was sufficiently rooted in the debtor's pre-bankruptcy past to be considered property of the estate as of the commencement of the case. *Id.* at 1279. The "sufficiently rooted" determination was based upon the malpractice action having arisen directly out of the debtor's interactions with the law firm prior to filing, *i.e.,* the debtor's instructions to file a chapter 11 and the firm's alleged disregard of those instructions. *Id.* Here, the Debtor's cause of action, represented by the Rule 9011 Motion, did not arise until the involuntary bankruptcy petition was filed against him. Unlike the debtor's malpractice claim in *Alvarez*, the Debtors' Rule 9011 Motion is not sufficiently rooted in the Debtor's pre-bankruptcy past to be considered part of the bankruptcy estate. The Debtor

20

testified that he never contemplated filing for bankruptcy and that he was totally surprised when he was served with the involuntary petition. Thus, he was not even aware that a petition had been filed against him until after it was a *fait accompli*. Thus, the Court concludes that the Rule 9011 Motion is not rooted in the Debtor's pre-bankruptcy past and it is not property of the estate. Therefore the issue whether the Rule 9011 Motion is exempt property is moot.

## **CONCLUSION**

As discussed above, although the Court found the Debtor to be a credible witness who acted in good faith, the Debtor violated section 727(a)(3) by failing to keep adequate records from which the Trustee and creditors might reasonably ascertain his financial condition; and the Debtor violated section 727(a)(5) by not being able to satisfactorily explain the disbursement or dissipation of his income as reported on his tax returns for the years 1999-2003, and of the funds loaned to him by Matt Wager. The Court must therefore deny the Debtor his discharge.

The Trustee's objection to claims of exemption are sustained in part, and overruled in part. The life insurance policy and the Rule 9011 Motion are not property of the estate. The household goods and furnishings, the Debtor's clothing, two watches, gold chain, and the CEA Entertainment lawsuit are not owned by the Debtor and his non-filing spouse as tenants by the entirety. The

21

Trustee's objection to the claim that the aforesaid property is exempt as tenants by the entirety property is sustained.

**ORDER**

The Court, having heard the testimony of the witness, having considered the documentary evidence, the candor and demeanor of the witness, the arguments of counsel, having reviewed the evidence, the applicable law, and being otherwise fully advised in the premises, hereby **ORDERS AND ADJUDGES:**

1.   Trustee's objection to Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2) is **OVERRULED.**

2.   Trustee's objections to Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(3) and 727(a)(5) are **SUSTAINED.** The Debtor's discharge is **DENIED.**

3.   The Trustee's objection to claims of exemption are **SUSTAINED IN PART**, and **OVERRULED IN PART**, as follows:

    a) The Kirshner International, Inc. stock is owned by Debtor and his non-filing spouse as tenants by the entireties exempt from the claims of all but joint creditors.

    b) The household goods and furnishings, Debtor's clothing, two Fossil watches, and gold chain are not owned by the Debtor and his non-filing spouse as tenants by the entireties.

    c) The CEA Entertainment lawsuit is not owned by Debtor and his non-filing spouse as tenants by the entirety and has been surrendered to the Trustee.

    d) The life insurance policy and the Rule 9011 Motion are not property of the estate.

4.   Pursuant to Federal Rule of Bankruptcy Procedure 9021, a separate final judgment shall be entered by the Court contemporaneously herewith.

### ###

Copies furnished to:

John Walsh, Esq.
Elias Dsouza, Esq.
Donald Kirshner
AUST